**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT SHAWN PRICE,** | : | **Civil No. 1:25-CV-104** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I. Introduction

Social Security appeals are guided by a familiar five-step analytical paradigm. Step 2 in this process entails a determination regarding whether the claimant suffers from any severe medically determinable impairments. This inquiry first requires an Administrative Law Judge (ALJ) to determine whether an impairment is "medically determinable," or one that is established by objective medical evidence, and then whether each medically determinable impairment is severe. In order to meet the Step 2 severity test, an impairment need only cause a slight abnormality that has more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p 85–28. Thus, the Step 2 severity inquiry has aptly been described as a "*de minimus* screening device to dispose of groundless claims."

McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Therefore, we are cautioned that any doubt as to whether this showing has been made is to be resolved in favor of the applicant, and Step 2 denials of benefits should be reviewed with close scrutiny. Id. Accordingly, it is axiomatic that: "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." Id. at 361 (citing SSR 85–28, 1995 WL 56856, at *4 ("Great care should be exercised in applying the not severe impairment concept")).

This *de minimis* standard works in tandem with another more far reaching paradigm governing the disability analysis which imparts a duty on the part of the ALJ to "to develop a full and fair record . . . [and] secure relevant information regarding a claimant's entitlement to social security benefits." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citation omitted). Thus, where the record is insufficient at Step 2 to determine whether a mental impairment is medically determinable, "[t]he ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999) (citing Stambaugh on Behalf of Stambaugh v. Sullivan, 929 F.2d 292, 295 (7th Cir.1991); Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir.1991)).

This case presents an uncommon situation where the ALJ found the plaintiff's mental impairments were not medically determinable and did not conduct any

severity analysis of these impairments. But the objective medical record, while slim and equivocal, does at least create a suggestion of mental impairment warranting further inquiry. Moreover, every state agency consultant who considered Price's record reaffirmed the need for further inquiry when they concluded there was insufficient evidence in the record to evaluate his impairments. Nonetheless, without conducting any severity analysis of the plaintiff's mental impairments, the ALJ summarily concluded at Step 2 that none of these impairments were medically determinable. Thus, the ALJ engaged in precisely the form of cursory claims analysis that is "certain to raise a judicial eyebrow." McCrea, 370 F.3d at 361.

Upon consideration, we find that the ALJ's failure to develop the record of the plaintiff's mental impairments and rejection of the opinions of every psychiatric evaluator that more evidence was needed in favor of his lay opinion that the plaintiff had no medically determinable mental impairment was error. Therefore, this case will be remanded for further development of this issue.

## II. **Factual History and Procedural Background**

On April 4, 2022, the plaintiff, Robert Price, filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. In his application, Price alleged an onset of disability beginning March 6, 2016. (Tr. 10). According to Price, he was disabled due to the combined impact of an array of physical and emotional impairments, including syncope with frequent

unconscious episodes, Crohn's disease, and post-traumatic stress disorder. (Tr. 77). Price was born on February 9, 1974, and was approximately 42 years old at the time of the alleged onset of his disability making him a younger individual under the Commissioner's regulations. (Id.) Price is a veteran, has a high school education and past work experience as a forklift operator. (Tr. 46-47).

### A. Price's Clinical History

The plaintiff challenges the ALJ's conclusion that his mental impairments were not medically determinable, a conclusion which was partially based upon the paucity of objective evidence documenting these impairments. While we agree the record is sparce, focusing on the relevant period following the alleged onset date, March 6, 2016, through the plaintiff's date last insured, June 30, 2022, our review reveals objective medical evidence at least suggesting the plaintiff was suffering from mental illness during this time. For example, although it was not until his referral to behavioral health in February 2023, after the date last insured, that his medical records document more robust mental health findings, such as moderate depression and anxiety and clinically significant traumatic stress, these notes state he had been struggling with anxiety, depression, and PTSD symptoms since March 2016, worsening in the prior three years.[1] (Tr. 538-39). Moreover, notes from his

[1] These notes also state that Price had received psychiatric treatment in December 2018 and February 2019, suggesting gaps in the treatment records.

primary care physician and cardiologist during the relevant period endorse diagnoses of anxiety, depression, and PTSD, and note that he should follow up with psychiatry and psychology. (Tr. 372-73, 357-58). In fact, following extensive testing, his cardiologist concluded that his frequent episodes of syncope were "induced by stressors and anxiety." (Tr. 393). While after the date last insured, examinations following his referral to behavioral health for treatment of these impairments show difficulty focusing and concentrating, anger outbursts, and anxious and depressed mood. (Tr. 496-99, 539). These 2023 behavioral health notes also note a history of bulimia, PTSD, and traumatic brain injury and a diagnosis of personality disorder with cluster B traits. (Tr. 502-03).

These treatment records demonstrate the plaintiff had been diagnosed with mental impairments during the relevant period and notes relating back to the relevant period suggest he struggled with symptoms of these impairments during that time, though the extent of these limitations is not clearly addressed.

**B. <u>Medical Opinions</u>**

Given this ambiguous clinical history of the plaintiff's mental impairments, both State agency psychiatrists who reviewed Price's file concluded there was not enough evidence to evaluate these conditions. On September 2, 2022, Dr. Richard Williams stated that the evidence was insufficient for him to evaluate the plaintiff's mental health conditions. Dr. Williams concluded that the medical file did not

establish the existence of a severe mental impairment but that, "[a]s of the [date last insured], the medical data in file is not sufficient to properly process this case." (Tr. 79). On reconsideration in February 2023, Dr. Peter Garito made identical findings that the data was insufficient to properly evaluate Price's mental impairments. Thus, the only two mental health professionals who reviewed Price's case were unable to evaluate his impairments due to insufficient information.[2]

It was against this backdrop that the ALJ made a Step 2 determination that Price's mental impairments were not medically determinable without evaluating their severity or developing the record.

**C. <u>The ALJ Hearing and Decision</u>**

In September 2023 and February 2024, the ALJ conducted hearings in Price's case. (Tr. 33-75). At the initial hearing, the plaintiff testified that he has anxiety and stress from fearing he is going to pass out from activity and even seemed to need to take a moment to catch his breath during the hearing. (Tr. 67-68). He also stated he has anxiety being around too many people including walking around a grocery store. (Tr. 69). In February 2024 he testified his mental health issues were, "not too good," and that he had issues with anxiety and claustrophobia getting treatment for his back issues. (Tr. 45). He stated he was being treated for his mental health issues and just

[2] As discussed in more detail below, the two medical consultants tasked with evaluating the plaintiff's physical impairments also concluded the evidence was insufficient.

had to get the right medication. (Id.)

Following these hearings, on June 7, 2024, the ALJ entered a decision denying Price's application for disability benefits. (Tr. 7-24). In this decision, the ALJ found that Price last met the insured status requirements of the Social Security Act on June 30, 2022, and had not engaged in substantial gainful activity during the period from his alleged onset date of March 6, 2016, through his date last insured. (Tr. 13). At Step 2 the ALJ concluded that Price suffered from the following medically determinable impairments: vasovagal syncope with cardiac dysrhythmia, migraines, hypertension, Crohn's disease, and obesity. (Tr. 13).

It was at Step 2 of the sequential analysis that the ALJ then considered the plaintiff's mental impairments. The ALJ did not conduct a severity assessment of the plaintiff's depression, anxiety, and PTSD, considering the functional degree of impairment in the four broad areas of mental functioning as required by the regulations, but rather wholly rejected them as non-medically determinable impairments. In so concluding, the ALJ explained:

> The claimant also alleges disability secondary mental health impairments of depression, anxiety, and PTSD (Exhibit B16E). While he reported having depressed mood and increased anxiousness over stressors. However, a review of the relevant medical evidence from the alleged onset date to the date last insured do not show diagnoses, consistent reporting of symptoms, and minimal treatment of depressed mood and anxiousness with medication management. The medical evidence does not show anxiety interfering with the claimant's life, depressive symptoms most of day, nearly every day for at least two weeks, or PTSD symptoms lasting at least one month to support the

> diagnoses (Exhibits B1F and B3F/182-257). Accordingly, the undersigned finds depression, anxiety, and PTSD are not medically determinable during the relevant period from the alleged onset date to the date last insured.

(Tr. 14).

While, as previously discussed, there was limited evidence of how the plaintiff's mental impairments impacted his ability to perform work-related activity, this cursory assessment by the ALJ ignored the mental health diagnoses and referral to psychiatry and psychology during the relevant period and notes from February 2023 that he had been struggling with anxiety, depression, and PTSD symptoms since March 2016, worsening in the past three years. Moreover, since the ALJ found that these impairments were not medically determinable during the relevant period, the ALJ did not address or incorporate any mental limitations in the subsequent residual functional capacity (RFC) assessment.

The RFC assessment was remarkable in another way in that it was divorced from any medical opinion. On this score, after concluding that the plaintiff did not have an impairment or combination of impairments that rendered him *per se* disabled under the disability listings, the ALJ crafted the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally push and/or pull with both upper extremities and both lower extremities. The claimant can frequently reach, handle and finger with both upper extremities. He can occasionally climb ramps or stairs, but never climb ladders, ropes or

> scaffolds. The claimant can occasionally balance, stoop, kneel, crouch or crawl. He can never tolerate exposure to unprotected heights, and he can never operate hazardous machinery. The claimant can tolerate occasional exposure to humidity, wetness, atmospheric conditions, extreme cold, extreme heat and vibrations.

(Tr. 15). In reaching this RFC determination, the ALJ rejected every medical opinion tendered in this case. At the outset, despite the fact that the four state agency experts unanimously agreed that further development of the factual record was necessary, the ALJ stated "the undersigned found the medical evidence sufficient for review." (Tr. 17). The ALJ justified the wholesale rejection of this state agency expert consensus through the expedient of declaring all of these opinions unpersuasive in light of the after-acquired medical records. (Id.) Yet, the records post-dating these opinions only seem to further bolster the suggestion of mental illness since, in February 2023, Price was referred to behavioral health, and these notes state he had been struggling with anxiety, depression, and PTSD symptoms since the alleged onset date, March 2016, worsening in the prior three years. (Tr. 538-39).

Thus, the ALJ's RFC determination was unmoored to any medical opinion, rejected every medical judgment, and ignored the suggestion of every state agency expert to further develop the medical record. Having made these findings, the ALJ concluded that Price could not return to his past work but could perform other light exertional work in the national economy. (Tr. 18-19). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by

the Act and denied this claim. (Id.)

This appeal followed. On appeal, Price contends that the ALJ's Step 2 evaluation was flawed and that the ALJ substituted his lay opinion for that of a medical expert in formulating the RFC. We agree that more was required on the part of the ALJ to assess the plaintiff's mental impairments under the regulations, Accordingly, we will remand this case for a more fulsome evaluation of this claim.

## III. Discussion

### A. Standard of Review-The Roles of the ALJ and this Court

Resolution of any social security appeal involves consideration of the respective roles of two adjudicators—the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do his or her past relevant work; and (5) the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Notably, the Third Circuit Court of Appeals has recognized that the burden placed on an applicant at step two of this process is not exacting, and that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Once the ALJ makes a disability determination, it is then the responsibility of

this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3*); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

"In determining if the Commissioner's decision is supported by substantial

evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292 at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

On this score, one other rule applies. When evaluating the legal sufficiency of an ALJ decision it is axiomatic that that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). Accordingly, we should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B. Assessing Impairments and Severity at Step 2**

These principles apply with particular force to an ALJ's Step 2 determinations. Step 2 of the sequential analysis is used by ALJs to determine

whether a claimant has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). But, "deciding that question involves two separate inquiries: an ALJ is required to determine (1) whether an impairment is medically determinable, and if so (2) whether that medically determinable impairment is severe or non-severe." Roldan v. Kijakazi, No. 3:21-CV-621, 2023 WL 2567988, at *9–10 (M.D. Pa. Feb. 28, 2023), report and recommendation adopted, No. 3:21-CV-621, 2023 WL 2563080 (M.D. Pa. Mar. 17, 2023) (citing Robert E. v. Comm'r of Soc. Sec., No. 1:20-CV-06882-NLH, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021); 20 C.F.R §§ 404.1521, 404.1522, 416.921, 416.922) (internal citations omitted)).

As to the first inquiry, in determining whether an impairment is medically determinable, the regulations provide that,

> "A 'medically determinable' impairment is one that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Scipio v. Comm'r of Soc. Sec., 611 F. App'x 99, 101–02 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(3)). Accordingly, a "mental impairment must be established by objective medical evidence from an acceptable medical source" and an ALJ "will not use" a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.

Corradina S. v. Bisignano, No. 3:23-CV-3121, 2025 WL 1902590, at *7 (D.N.J. July

10, 2025).

While ALJs must rely upon objective evidence to establish a medically determinable impairment, "[w]hen evidence in the record suggests a possible mental impairment, the ALJ 'must determine the severity of the mental impairment(s) by using the ratings of functional limitations and determine whether the impairment meets or is equivalent in severity to a listed mental disorder." Lewis v. Saul, No. 120CV00745RDMGBC, 2021 WL 3163822, at *4 (M.D. Pa. July 8, 2021) (citing Martinez v. Colvin, No. CIV.A. 13-5415, 2015 WL 4876284, at *7–8 (E.D. Pa. Aug. 12, 2015); 20 C.F.R. § 404.1520(d). Moreover, as the Third Circuit has explained:

> The burden placed on an applicant at step two is not an exacting one. Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at *3; see *also Newell,* 347 F.3d at 546 ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. Newell, 347 F.3d at 546–47. In short, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Id. at 546; accord McDonald, 795 F.2d at 1123.

McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Thus, where the evidence in the record suggests a mental impairment, an ALJ is required to conduct a severity analysis. Further, this severity analysis is a *de minimis* screening device which requires only something beyond a slight abnormality.

In addition to the articulation requirements at Step 2, where the ALJ lacks sufficient evidence to conduct this assessment, the ALJ has a duty to develop the record of an individual's mental impairments to determine both whether they are medically determinable and their severity. As the Third Circuit has explained, "[t]he ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999) (citing Stambaugh on Behalf of Stambaugh v. Sullivan, 929 F.2d 292, 295 (7th Cir.1991); Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir.1991) (requiring psychiatric analysis because of a psychiatrist's diagnosis of "[c]hronic fatigue and lack of energy; this possibly could be more likely to be chronic mental depression in this patient" in the record). "In fact, one of the essential purposes of [the mental health severity analysis] is to determine 'whether or not a mental impairment(s) exists.'" Id. (quoting § 404.1520a(b)(1)).

**C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

A necessary corollary to the ALJ's duty to develop the record is the ALJ's consideration of the medical opinion evidence in the record. Under the new paradigm applied to applications filed after March 2017:

> [T]he Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant;

> specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

An ALJ's duty to develop the record is heightened in situations where the medical opinion evidence upon which the ALJ relies suggests there is not enough evidence to evaluate the severity of an individual's impairments. Indeed, in this circuit, an "ALJ [is] obligated to investigate the claimant's mental impairments .... [and this] obligation is heightened when the Commissioner fails, as he did here, to satisfy his obligation under 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1520a to have a qualified psychiatrist or psychologist evaluate [the plaintiff's] claim during the initial or reconsideration stage." Lewis v. Saul, No. 120CV00745RDMGBC, 2021 WL 3163822, at *3 (M.D. Pa. July 8, 2021) (quoting Plummer v. Apfel, 186 F.3d 422, 434–35 (3d Cir. 1999); 42 U.S.C. § 421(h); 20 C.F.R. § 404.1520a(e)(1)). Thus, where a medical opinion indicates there is not enough evidence to evaluate an individual's mental impairments "the[ ] medical opinions pertaining to Plaintiff's mental health impairments demonstrate 'a clear need for further development of the record regarding the limitations that stemmed from Plaintiff's [mental impairments]' and indicate the ALJ abused his discretion in failing to acquire a consultative evaluation." Id. (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b); Plummer, 186 F.3d at 434; Miller v. Berryhill, No. 3:17CV1452, 2019 WL 3776662, at *6–7 (M.D. Pa. Aug. 12, 2019) (remanding where the ALJ "'could and should have done more' because the ALJ appeared to utilize the lack of evidence to support her decision

rather than gather more information [and] the ALJ was slightly better suited to make a determination in this case because he had access to the plaintiff's treatment records"); Harlan v. Astrue, 510 F. App'x 708, 712 (10th Cir. 2013); Richards v. Colvin, 223 F. Supp. 3d 296, 307–08 (M.D. Pa. 2016); Martinez v. Colvin, No. CIV.A. 13-5415, 2015 WL 4876284, at *7–8, 10-11 (E.D. Pa. Aug. 12, 2015); Winters v. Colvin, No. CV 09-460-CJB, 2013 WL 5956246, at *15–16 (D. Del. Nov. 7, 2013)). Thus, "[i]t is necessary . . . that an ALJ order a consultative examination 'when the evidence as a whole ... is not sufficient to support a decision.'" Martinez v. Colvin, No. CIV.A. 13-5415, 2015 WL 4876284, at *7 (E.D. Pa. Aug. 12, 2015) (quoting Ray v. Astrue, 649 F.Supp.2d 391, 408 (E.D.Pa.2009)).

It is against these legal guideposts that we assess Price's case.

**D. This Case Will be Remanded for Further Assessment of the Plaintiff's Emotional Impairments.**

In this case, the ALJ's decision to reject every medical opinion that more evidence was needed to assess Price's mental impairments and instead conclude at Step 2 of the five-step sequential analysis which applies to Social Security cases that Price had no medically determinable mental impairment ran afoul of at least three well-settled tenets which govern the assessment of disability claims.

First, while the record of the plaintiff's mental impairments during the relevant period was relatively meager, the suggestion of mental illness, including diagnoses by his providers and a referral to behavioral health suggesting his

symptoms started in 2016, required the ALJ to conduct a severity analysis of these impairments rather than wholly discounting them as not medically determinable at Step 2. Indeed, "[w]hen evidence in the record suggests a possible mental impairment, the ALJ 'must determine the severity of the mental impairment(s) by using the ratings of functional limitations and determine whether the impairment meets or is equivalent in severity to a listed mental disorder." Lewis v. Saul, No. 120CV00745RDMGBC, 2021 WL 3163822, at *4 (M.D. Pa. July 8, 2021). Here, the record[3] at least "suggests a possible mental impairment," and the ALJ conducted no such analysis. This was error.

Further, the suggestion of mental illness in the record that went entirely unaddressed by the ALJ coupled with the medical source consensus that further development of the record was needed triggered another unsatisfied duty on the part of the ALJ: the duty to develop the record. As the Third Circuit has explained, "[t]he ALJ has a duty to develop the record when there is a suggestion of mental

---

[3] Specifically, notes from his primary care physician and cardiologist during the relevant period endorsing diagnoses of anxiety, depression, and PTSD, and noting that he should follow up with psychiatry and psychology, (tr. 372-73, 357-58); his cardiologist's conclusion that his frequent episodes of syncope were "induced by stressors and anxiety," (tr. 393); and notes following the date last insured stating his symptoms dated back to 2016 and examinations showing difficulty focusing and concentrating, anger outbursts, and anxious and depressed mood, (tr. 496-99, 539) and noting a history of bulimia, PTSD, and traumatic brain injury and a diagnosis of personality disorder with cluster B traits. (Tr. 502-03).

impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999). This is particularly true where the ALJ has failed to "have a qualified psychiatrist or psychologist evaluate [the plaintiff's] claim during the initial or reconsideration stage." Lewis, 2021 WL 3163822, at *3. Here, the only qualified medical opinions concluded there was insufficient evidence to evaluate the plaintiff's impairments, demonstrating "a clear need for further development of the record regarding the limitations that stemmed from Plaintiff's [mental impairments] and indicat[ing] the ALJ abused his discretion in failing to acquire a consultative evaluation." Id.

Instead, the ALJ's rejection of the state agency expert consensus calling for further development of the record exposed another shortcoming in the evaluation of this case in that the ALJ explicitly based his RFC assessment upon his own assessment of the evidence, stating that while every qualified medical expert concluded further development of the record was needed, "[t]he undersigned is not persuaded by these findings because as noted above, the undersigned found the medical evidence sufficient for review." (Tr. 17). This was error since it is well settled that the ALJ may not simply substitute "h[is] own credibility judgments, speculation or lay opinion," for the opinions of treating sources.[4] Morales v. Apfel,

[4] The plaintiff also challenges the physical RFC by arguing the ALJ substituted his

225 F.3d 310, 317 (3d Cir. 2000). In addition, the ALJ's decision to reject *every* medical opinion in this case in favor of his own view of the evidence is particularly problematic since:

> In following this course and effectively discounting *all* medical opinions, the ALJ gave insufficient credence to the concept that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11-2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)).

Diaz v. Berryhill, 388 F. Supp. 3d 382, 398 (M.D. Pa. 2019). See also O'Neill v. Bisignano, No. 4:24-CV-2156, 2025 WL 3469271, at *10 (M.D. Pa. Dec. 3, 2025).

Simply put, given the *"de minimus"* nature of the claimant's burden at Step 2, acknowledging that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and accepting that the claimant's burden at

---

lay opinion for that of a medical expert in evaluating his physical impairments. We acknowledge that no expert opined on either the plaintiff's physical or mental RFC since all four state agency experts opined the evidence was insufficient for evaluation. (Tr. 76-87). Moreover, as the plaintiff points out, there was the unaddressed suggestion in the record by several treating sources that the plaintiff was not capable of the level of exertion outlined in the RFC, specifically that he was to avoid prolonged standing or walking due to his frequent syncope, that went unaddressed by the ALJ. (Tr. 359, 443-45, 447, 452, 465). Since we find remand is necessary based upon the ALJ's failure to adequately evaluate the plaintiff's mental impairments, we do not reach the issue of the appropriateness of the physical RFC but do note that, on remand, the ALJ should conduct a new analysis of the medical opinion evidence, considering all medical opinions in the record, and develop the record of all of the plaintiff's impairments to the extent suggested by the medical experts who opined on his case.

step two is "not an exacting one," McCrea, 370 F.3d at 360, we believe that the ALJ erred by failing to assess the severity of the plaintiff's mental impairments at Step 2.[5] The ALJ then compounded this error by rejecting the state agency expert consensus that further development of the record was necessary, resulting in an RFC assessment which is unsupported by substantial evidence. Yet, while we conclude that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ once an adequate medical record is fully developed.

## IV. Conclusion

Accordingly, for the foregoing reasons, this case will be REMANDED for further consideration.

---

[5] It is also worth noting that, while in some cases in which an ALJ erroneously concludes an impairment in nonsevere at Step 2, this error can be cured if the ALJ considers this impairment in the RFC assessment, we cannot apply harmless error here since, "numerous courts have concluded that when a step-two error stems from the ALJ's decision that an impairment is not medically determinable the harmless error doctrine is inapplicable." Roldan v. Kijakazi, No. 3:21-CV-621, 2023 WL 2567988, at *15 (M.D. Pa. Feb. 28, 2023), report and recommendation adopted, No. 3:21-CV-621, 2023 WL 2563080 (M.D. Pa. Mar. 17, 2023) (citing Ann S v. Kijakazi, No. 2:20-CV-00841-JCB, 2022 WL 204596, at *5 (D. Utah Jan. 24, 2022)).

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 28, 2026